## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.  24-cv-62346

MYCOSKIE, LLC,

        Plaintiff,

vs.

TOMSHOESUSA.US, AN INDIVIDUAL,
BUSINESS ENTITY, OR
UNINCORPORATED ASSOCIATION,

        Defendant.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Mycoskie, LLC ("Mycoskie" or "Plaintiff"), hereby sues Defendant, the Individual, Business Entity, or Unincorporated Association identified as "TOMSHOESUSA.US" and in the caption above ("Defendant"). Defendant is promoting, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Mycoskie's TOMS trademarks within this district through the fully interactive commercial Internet website operating under the domain name identified as "tomshoesusa.us" (the "Subject Domain Name"). In support of its claims, Mycoskie alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

Mycoskie's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendant is subject to personal jurisdiction in this district, because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district through, at least, the domain name accessible and doing business in Florida and operating under the Subject Domain Name. Alternatively, based on its overall contacts with the United States, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, a non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Mycoskie, LLC is a California Limited Liability Company with its principal place of business at 5404 Jandy Place, Los Angeles, California, 90066. TOMS SHOES, INC. ("TOMS") is the exclusive licensee of Mycoskie, LLC. TOMS SHOES, INC. is a Delaware corporation with its principal place of business at 5404 Jandy Place, Los Angeles, California, 90066. Mycoskie, through its licensee TOMS, is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those identified on Schedule "A" hereto. TOMS offers for sale and sells its trademarked goods within the State of

Florida, including this district, and throughout the United States. Defendant, through the sale and offer to sell counterfeit and infringing TOMS branded products, is directly and unfairly competing with Mycoskie's economic interests in the United States, including within the State of Florida, and causing Mycoskie irreparable harm and damage within this jurisdiction.

5.      Like many other famous trademark owners, Mycoskie suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendant herein, who wrongfully reproduce and counterfeit Mycoskie's TOMS trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their websites.

6.      To combat the harm caused by the actions of Defendant and others engaging in similar conduct, each year Mycoskie expends significant resources in connection with trademark enforcement efforts, including legal fees and investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires Mycoskie to expend significant resources across a wide spectrum of efforts to protect both consumers and it from the confusion and the erosion of the goodwill connected to Mycoskie's brand.

## THE DEFENDANT

7.      Defendant is an individual, business entity of unknown makeup, or unincorporated association who resides and/or operates in a foreign jurisdiction or redistributes products from the same or similar sources in that location, and/or ship its goods from the same or similar sources in that location to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute its products from that location. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendant targets its

business activities toward consumers throughout the United States, including within this district, through the operation of, at least, its fully interactive commercial website under the Subject Domain Name.

8.      Defendant is the past and present controlling force behind the sale of products bearing and/or using counterfeits and infringements of Mycoskie's TOMS trademarks as described herein.

9.      Defendant directly engages in unfair competition with Mycoskie by advertising, offering for sale, and/or selling goods bearing and/or using counterfeits and infringements of one or more of Mycoskie's TOMS trademarks to consumers within the United States and this district through at least the Subject Domain Name, as well as additional Subject Domain Names not yet known to Mycoskie. Defendant has purposefully directed some portion of its unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit and infringing TOMS-branded goods into the State.

10.      Defendant has registered, established, or purchased, and maintained its Subject Domain Name. Defendant has engaged in fraudulent conduct with respect to the registration or maintenance of the Subject Domain Name by providing false and/or misleading information to the relevant registrar during the registration and/or maintenance process. Defendant has anonymously registered and maintained its Subject Domain Name for the sole purpose of engaging in unlawful counterfeiting and infringing activities.

11.      Defendant will likely continue to register or acquire new alias Subject Domain Names or other aliases and related payment accounts for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Mycoskie's TOMS trademarks unless permanently enjoined.

12.     Defendant's Subject Domain Name, and any other alias e-commerce store name used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Mycoskie's TOMS trademarks, are essential components of Defendant's online activities and are the means by which Defendant furthers its counterfeiting and infringement scheme and cause harm to Mycoskie. Moreover, Defendant is using Mycoskie's famous name and trademarks to drive consumer traffic to its website operating under the Subject Domain Name, thereby increasing the value of the Subject Domain Name and decreasing the size and value of Mycoskie's legitimate marketplace and intellectual property rights at Mycoskie's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

13.     Mycoskie, LLC, is, and at all times relevant hereto has been, the registered owner, and TOMS SHOES, INC., the exclusive licensee, of the trademarks identified on Schedule "A" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "TOMS Marks"). The TOMS Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the TOMS Marks are attached hereto as Composite Exhibit "1."

14.     The TOMS Marks have been used in interstate commerce to identify and distinguish Mycoskie's high-quality goods for an extended period.

15.     The TOMS Marks have been used in commerce by Mycoskie long prior to Defendant's use of copies of those Marks. The TOMS Marks have never been assigned or licensed to the Defendant in this matter.

16.     The TOMS Marks are symbols of Mycoskie's quality, reputation, and goodwill and have never been abandoned. Mycoskie has carefully monitored and policed the use of the TOMS Marks.

17.     The TOMS Marks are well-known and famous and have been for many years. Mycoskie expends substantial resources developing, advertising, and otherwise promoting the TOMS Marks.

18.     Further, Mycoskie extensively uses, advertises, and promotes the TOMS Marks in the United States in association with the sale of high-quality goods. Mycoskie expends substantial resources promoting the TOMS Marks and products bearing and/or using the TOMS Marks.

19.     As a result of Mycoskie's efforts, consumers readily identify merchandise bearing or sold using the TOMS Marks, as being high-quality goods sponsored and approved by Mycoskie.

20.     Accordingly, the TOMS Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

21.     Genuine goods bearing and/or using the TOMS Marks are widely and legitimately advertised and promoted by Mycoskie, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Mycoskie's overall marketing and consumer education efforts. Thus, Mycoskie expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Mycoskie and its authorized retailers to educate consumers fairly and legitimately about the value associated with the TOMS brand and the goods sold thereunder and the problems associated with the counterfeiting of Mycoskie's TOMS trademarks.

**Defendant's Infringing Activities**

22.     Defendant is promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the TOMS Marks (the "Counterfeit Goods") through at least the commercial website operating under the Subject Domain Name. True and correct copies of the web pages reflecting samples of the Internet website operating under the Subject Domain Name displaying TOMS branded items for sale are attached hereto as Composite Exhibit "2." Specifically, Defendant is using the TOMS Marks to initially attract online consumers and drive them to Defendant's Internet website operating under the Subject Domain Name. Defendant is using identical copies of one or more of the TOMS Marks for different quality goods. Mycoskie used the TOMS Marks extensively and continuously before Defendant began offering counterfeit and confusingly similar imitations of Mycoskie's merchandise.

23.     Defendant's Counterfeit Goods are of a quality substantially different than that of Mycoskie's genuine TOMS goods. Defendant is actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of its Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Mycoskie despite Defendant's knowledge that it is without authority to use the TOMS Marks. Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's domain name are genuine goods originating from, associated with, and/or approved by Mycoskie.

24.     Defendant advertises its website, including its Counterfeit Goods offered for sale, to the consuming public using at least the Subject Domain Name. In so doing, Defendant improperly and unlawfully uses one or more of the TOMS Marks without Mycoskie's permission.

25.     Defendant is, upon information and belief, employing and benefiting from similar advertising and marketing strategies based upon an unauthorized use of counterfeits and infringements of one or more of the TOMS Marks. Specifically, Defendant is using counterfeits and infringements of Mycoskie's famous name and the TOMS Marks to make its website store selling unauthorized goods appear more relevant and attractive to consumers searching for both Mycoskie/TOMS and non-TOMS goods and information online. Defendant is causing harm to Mycoskie and the consuming public by (i) depriving Mycoskie and other third parties of its right to fairly compete for space online and within search engine results and reducing the visibility of Mycoskie's genuine TOMS goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the TOMS Marks, and (iii) increasing Mycoskie's overall cost to market its goods and educate consumers about its brand via the Internet.

26.     Defendant is conducting and targeting its counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States. As a result, Defendant is defrauding Mycoskie and the consuming public for Defendant's own benefit.

27.     At all times relevant hereto, Defendant has had full knowledge of Mycoskie's ownership of the TOMS Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

28.     Defendant's use of the TOMS Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of its Counterfeit Goods, is without Mycoskie's consent or authorization.

29.     Defendant is engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Mycoskie's rights for the purpose of trading on Mycoskie's goodwill and reputation. If Defendant's intentional counterfeiting and infringing, cybersquatting, and unfairly competitive activities are not permanently enjoined by this Court, Mycoskie and the consuming public will continue to be harmed.

30.     Defendant's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Mycoskie's genuine TOMS goods and Defendant's Counterfeit Goods, which there is not.

31.     Further, Defendant, upon information and belief, is likely to transfer or secret its assets to avoid payment of any monetary judgment awarded to Mycoskie.

32.     Mycoskie has no adequate remedy at law.

33.     Mycoskie is suffering irreparable injury and has suffered damages because of Defendant's unauthorized and wrongful use of the TOMS Marks. If Defendant's intentional counterfeiting, infringing, and unfairly competitive activities are not permanently enjoined by this Court, Mycoskie and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit.

34.     The harm and damages sustained by Mycoskie have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

35.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 34 above.

36.     This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeit and confusingly similar imitations of the TOMS Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

37.     Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the TOMS Marks. Defendant is continuously infringing and inducing others to infringe the TOMS Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing Mycoskie TOMS branded goods.

38.     Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.

39.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Mycoskie and are unjustly enriching Defendant with profits at Mycoskie's expense.

40.     Defendant's above-described unlawful actions constitute counterfeiting and infringement of the TOMS Marks in violation of Mycoskie's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     Mycoskie has suffered and will continue to suffer irreparable injury and damages while Defendant is earning a substantial profit due to Defendant's above-described activities if Defendant is not permanently enjoined.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

42.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 34 above.

43.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the TOMS Marks have been widely advertised and offered for sale throughout the United States via the Internet based website under the Subject Domain Name.

44.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the TOMS Marks are virtually identical in appearance to Mycoskie's genuine TOMS goods. However, Defendant's Counterfeit Goods are different in quality. Accordingly, Defendant's activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

45.     Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Mycoskie's detriment.

46.     Defendant has authorized infringing uses of one or more of the TOMS Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods. Defendant has misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by it are genuine, non-infringing goods.

47.     Additionally, Defendant is using counterfeits and infringements of one or more of the TOMS Marks to unfairly compete with Mycoskie and others for space within organic and paid search engine and social media results, thereby (i) depriving Mycoskie of valuable marketing and educational space online which would otherwise be available to Mycoskie, and (ii) reducing the visibility of Mycoskie's genuine TOMS goods on the World Wide Web and across social media platforms.

48.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.     Mycoskie has no adequate remedy at law and has sustained injury and damages caused by Defendant's conduct. Absent entry of an injunction by this Court, Mycoskie will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendant is earning a substantial profit.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
## PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))

50.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 54 above.

51.     At all times relevant hereto, Mycoskie has been and still is the owner of all rights, title and interest in and to the TOMS Marks

52.     Defendant has acted with the bad faith intent to profit from the TOMS Marks and the goodwill associated with therewith by the registration and maintenance of its Subject Domain Name.

53.     The TOMS Marks were already distinctive and famous at the time Defendant registered its Subject Domain Name.

54.     Defendant has no rights in or to the TOMS Marks.

55.     The Subject Domain Name is identical to, confusingly similar to, or dilutive of at least one of the TOMS Marks.

56.     Defendant's registration and maintenance of the Subject Domain Name was done with knowledge and constitutes a willful violation of Mycoskie's rights in the TOMS Marks. At a minimum, Defendant's conduct constitutes reckless disregard for and willful blindness to Mycoskie's rights.

57.     Mycoskie has no adequate remedy at law.

58.     Defendant's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

59.     Mycoskie has no adequate remedy at law. Mycoskie has suffered and will continue to suffer irreparable injury and damages due to Defendant's above-described activities if Defendant is not preliminarily and permanently enjoined. Additionally, Defendant will continue to wrongfully profit from its unlawful activities.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

60.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 34 above.

61.     This is an action against Defendant based on its promotion, advertisement, distribution, sale, and/or offering for sale, of goods bearing and/or using marks that are virtually identical to one or more of the TOMS Marks in violation of Florida's common law of unfair competition.

62.     Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the TOMS Marks. Defendant is also using counterfeits and infringements of one or more of the TOMS Marks to unfairly compete with Mycoskie and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

63.     Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's website as a whole and all products sold therein by its use of the TOMS Marks.

64.     Mycoskie has no adequate remedy at law and is suffering irreparable injury and damages because of Defendant's actions, while Defendant is unjustly profiting from those actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

65.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 34 above.

66.     Mycoskie is the owner of all common law rights in and to the TOMS Marks.

67.     This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods bearing and/or using one or more of the TOMS Marks.

68.     Specifically, Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the TOMS Marks.

69.     Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's Counterfeit Goods bearing and/or using the TOMS Marks.

70.     Mycoskie has no adequate remedy at law and is suffering damages and irreparable injury because of Defendant's actions, while Defendant is unjustly profiting from those actions.

**PRAYER FOR RELIEF**

71.     WHEREFORE, Mycoskie demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a.     Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling, or offering to sell its Counterfeit Goods; from infringing, counterfeiting, or diluting the TOMS Marks; from using the TOMS Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark, or design that may be calculated to falsely advertise the services or goods of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Mycoskie; from falsely representing themselves as being connected with Mycoskie, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant are in any way

endorsed by, approved by, and/or associated with Mycoskie; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the TOMS Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant; from affixing, applying, annexing, or using in connection with the sale of any goods a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of Mycoskie, or in any way endorsed by Mycoskie, and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Mycoskie's TOMS name or trademarks; and from otherwise unfairly competing with Mycoskie.

b.     Entry of a permanent injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services, or other support to, Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the TOMS Marks.

c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Mycoskie's request, those acting in concert or participation as service providers to Defendant who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Name and website through which Defendant engages in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the TOMS Marks.

d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Mycoskie to serve the injunction on any e-mail service

16

provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the TOMS Marks.

e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Mycoskie to serve the injunction on the domain name registrar(s) and/or the privacy protection service(s) for the Subject Domain Name to disclose to Mycoskie the true identity and contact information for the registrant of the Subject Domain Name.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, that upon Mycoskie's request, the top level domain (TLD) Registry for the Subject Domain Name, and any other domains used by Defendant, or its administrators, including backend registry operators or administrators, place the Subject Domain Name on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Name, and any other domain names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the TOMS Marks, to the IP addresses where the associated websites are hosted.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, canceling for the life of the current registration or, at Mycoskie's election, transferring the Subject Domain Name and any other domain names used by Defendant to engage in its counterfeiting of the TOMS Marks at issue to Mycoskie's control so it may no longer be used for unlawful purposes.

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Mycoskie to request any Internet search engines or

service provider referring or linking users to any URL of the Subject Domain Name, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Name and/or permanently disable the references or links to all URLs of the Subject Domain Name used by Defendant to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the TOMS Marks, based upon Defendant's unlawful activities being conducted via the Subject Domain Name as a whole and via any specific URLs identified by Mycoskie.

      i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Mycoskie to request any service providers, including specifically CloudFlare, Inc., to permanently cease providing any services to the Defendant in connection with any and all domain names, including but not limited to the Subject Domain Name, and websites through which Defendant engages in the promotion, offering for sale and/or sale of goods using counterfeits of the TOMS Marks, and further, permanently deleting the Subject Domain Name from its DNS used for the DoH (1.1.1.1), and identifying the websites operating under the Subject Domain Name as phishing websites based upon Defendant's unlawful phishing activities being conducted via the Subject Domain Name, including using Mycoskie's name and trademarks to falsely represent its websites operating under its Subject Domain Name Mycoskie or TOMS or associated with Mycoskie or TOMS, and wrongfully using the TOMS Marks in combination with the collection Personally Identifiable Information (PII), including names, addresses, buying information, payment information, and other important data.

      j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Mycoskie's request, any Internet marketplace website operators, administrators, registrar, and/or top level domain (TLD) Registry for the Subject

Domain Name who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendant's Subject Domain Name.

k.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to its Subject Domain Name(s) to Mycoskie and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at the non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

l.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the Subject Domain Name and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

m.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct in writing, the Registrar(s) for Subject Domain Name(s) to permanently close the domain registration account(s) in which any Subject Domain Name(s) are located and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at the non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

n.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct all of its service providers,

including specifically CloudFlare, Inc., to permanently cease providing all services to Defendant and surrender all records in connection with any and all domain names, including but not limited to the Subject Domain Name, and websites through which Defendant engages in the promotion, offering for sale and/or sale of goods using counterfeits of the TOMS Marks, and further, permanently deleting the Subject Domain Name from its DNS used for the DoH (1.1.1.1), and identifying the websites operating under the Subject Domain Name as phishing websites based upon Defendant's unlawful phishing activities being conducted via the Subject Domain Name, including using Mycoskie's TOMS name and trademarks to falsely represent its website operating under its Subject Domain Name as Mycoskie or associated with Mycoskie, and wrongfully using the TOMS Marks in combination with the collection Personally Identifiable Information (PII), including names, addresses, buying information, payment information, and other important data and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

o. Entry of an order requiring Defendant to account to and pay Mycoskie for all profits and damages resulting from Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the award to Mycoskie be trebled, as provided for under 15 U.S.C. § 1117, or that Mycoskie be awarded statutory damages from Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

p. Entry of an order requiring Defendant to account to and pay Mycoskie for all profits and damages resulting from Defendant's cybersquatting activities and that the award to Mycoskie be trebled, as provided for under 15 U.S.C. §1117, or that Mycoskie be awarded

statutory damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) as provided by 15 U.S.C. §1117(d) of the Lanham Act.

q.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Mycoskie's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

r.      Entry of an award of pre-judgment interest on the judgment amount.

s.      Entry of an order requiring Defendant, at Mycoskie's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

t.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: December 13, 2024.                          Respectfully submitted,
                                                   STEPHEN M. GAFFIGAN, P.A.

                                          By: **Stephen M. Gaffigan**
                                          Stephen M. Gaffigan (Fla. Bar No. 025844)
                                          Virgilio Gigante (Fla. Bar No. 082635)
                                          T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
                                          Christine Ann Daley (Fla. Bar No. 98482)
                                          401 East Las Olas Blvd., Suite 130-453
                                          Ft. Lauderdale, Florida 33301
                                          Telephone: (954) 767-4819
                                          E-mail: Stephen@smgpa.cloud
                                          E-mail: Leo@smgpa.cloud
                                          E-mail: Raquel@smgpa.cloud
                                          E-mail: Christine@smgpa.cloud

                                          Attorneys for Plaintiff, Mycoskie LLC

## SCHEDULE "A"
## <u>PLAINTIFF'S FEDERALLY REGISTERED TRADEMARKS</u>

| Trademark | Registration Number | Registration Date | Class / Relevant Goods |
|---|---|---|---|
| **TOMS** | 3,353,902 | Dec. 11, 2007 | IC 025 – Canvas shoes, shoes |
| **TOMS** | 3,566,093 | Jan. 20, 2009 | IC 025 – Clothing, namely, canvas shoes, shoes, caps, shirts, t-shirts, and hats |
|  | 3,765,503 | Mar. 23, 2010 | IC 025 – Baseball caps; caps; hats; canvas shoes; footwear for men and women; shoes; and shirts |
| **TOMS** | 3,662,112 | Jul. 28, 2009 | IC 025 – Clothing, namely, hoodies, and tops |
| **TOMS** | 4,192,925 | Jun. 06, 2011 | IC 009 – sunglasses and cases for sunglasses |
| **ONE FOR ONE** | 4,204,485 | Sep. 11, 2012 | IC 025 – Clothing, namely hats, sweatshirts, hooded sweatshirts, and shoes |
| **TOMS** | 4,313,981 | Oct. 13, 2011 | IC 009 – Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefore |
|  | 4,517,359 | Apr. 22, 2014 | IC 009 – Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefore |
|  | 4,627,111 | Oct. 28, 2014 | IC 009 – Eyewear |
| TOMS | 5,652,240 | Jan. 15, 2019 | IC 025 – Clothing, namely, hats, caps, sweatshirts, sweatpants, and shirts; and footwear |
| STAND FOR TOMORROW | 6,760,787 | Jun. 14, 2022 | IC 025 – Clothing, namely, hoodies, sweatshirts |